PER CURIAM:
Appellant Carlos Csicsmann (“Csicsmann”), an information technology worker, took leave under the Family and Medical Leave Act, 29 U.S.C. § 2614(a)(3)(B) (“FMLA”) after having hip surgery. Following his return to work, Csicsmann brought this action against CGI-AMS, Inc. (“CGI-AMS”) and co-worker Michael S. Sallada, Jr. (“Sallada”) (together “Appellees”), alleging that the Appellees: (1) failed to restore him to an “equivalent position” under the FMLA; (2) “regard[ed] him as disabled” in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12102(2)(C) (“ADA”); (3) failed to accommodate him under the ADA; and (4) retaliated against him for engaging in “protected activity” under the FMLA, Title VII, 42 U.S.C. § 2000e-3(a), and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132 (“ERISA”). The parties filed competing motions for summary judgment, and the district court entered judgment in favor of Appellees on all claims. Csicsmann appeals the district court’s disposition. For the reasons that follow, we affirm.
*165 i.
Given the procedural posture of this case, we summarize the facts in the light most favorable to Csicsmann. Evans v. Techs Application, 80 F.3d 954, 958 (4th Cir.1996). In November 2003, Csicsmann was Server Group Manager in the Information Technology Server Group at American Management Systems, Inc. (“AMS”).[1] He directly reported to Carl Warner (“Warner”), who in turn reported to the Vice President of Information Technology, Don Hirsch (“Hirsch”). Appellee Sallada also reported to Hirsch but did not directly supervise Csicsmann. In early November 2003, Csicsmann and Sallada engaged in a heated argument when some AMS offices lost computer connectivity. Csicsmann allegedly reported the incident to Vice President Hirsch and complained that Sallada “badger[ed] certain types of people.” J.A. 328.
Soon after the argument with Sallada, in December 2003, Csicsmann took FMLA leave to have hip surgery. He was out of the office until February 25, 2004. After his return to AMS, Csicsmann learned that his position had been eliminated and that he would be working on the Disaster Recovery Project. Csicsmann’s supervisors assert that they designed the Disaster Recovery position specifically to suit his “vast skill set” and that they assigned him the high-level responsibility of developing a disaster recovery plan, as well as creating processes for recovering corporate IT infrastructure in the case of a disaster. Csicsmann’s salary, title, bonus eligibility, health care, and retirement benefits remained the same as in his prior position, although his job responsibilities varied.
On March 4, 2004, Csicsmann informed his supervisors and the AMS Human Resources department that his hip was increasingly painful and inquired about adjusting his work schedule and taking long-term disability. Human Resources provided Csicsmann with an application for long-term disability status which he never submitted.
On March 10, 2004, AMS announced its impending merger with CGI Group Inc., and a CGI employee was tasked with eliminating 10% of the positions in the IT department in which Csicsmann worked. On May 5, 2004, Csicsmann’s position was selected for termination. By the end of 2004, all of the duties previously handled by Csicsmann’s IT department were transferred to- CGI facilities in Toronto and all of the Server Group positions at AMS were eliminated. Csicsmann has held other employment since his termination.
II.
After his termination, Csicsmann filed suit challenging AMS’s conduct towards him in several respects. He argued that AMS retaliated and discriminated against him because he took FMLA leave and complained about Sallada, and that AMS viewed him as disabled and improperly denied him a reasonable accommodation under the ADA. Csicsmann claimed that his new position was less prestigious and had different responsibilities than the old one. According to Csicsmann it was therefore not an equivalent position for FMLA purposes, and his assignment to it constituted an adverse employment action.
The district court rejected all of Csicsmann’s claims. The court found that Csicsmann’s new position was equivalent under the FMLA and that the assignment to it did not constitute an adverse employment action. The district court found that there was a legitimate business reason for *166 eliminating Csicsmann’s original position and that it was not eliminated in retaliation against Csicsmann for taking FMLA leave or for engaging in any protected activity under ERISA or Title VII. Finally, the court found that Csicsmann was not regarded as disabled under the ADA and therefore he had no claim for an accommodation.
On appeal Csicsmann challenges each of these conclusions, which we consider in turn. This court reviews the district court’s grant of summary judgment de novo. Med. Waste Assocs. v. Mayor of Baltimore, 966 F.2d 148, 150 (4th Cir. 1992). We do so bearing in mind that summary judgment is appropriate only when there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 4:77 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
IIL
A.
We first consider whether the district court erred in granting the Appellees summary judgment on Csicsmann’s FMLA claim. Because we agree that Csicsmann received an “equivalent position” upon his return to work, we find no error.
The FMLA allows an employee who takes qualifying leave to be restored either to his original, pre-leave position or to “an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.” 29 U.S.C. § 2614(a)(1) (2000). We recently explained that an employee does not have an absolute entitlement to restoration of his pre-leave position after taking FMLA leave. See Yashenko v. Harrah’s NC Casino, Co., 446 F.3d 541, 549 (4th Cir.2006). Further, federal regulations clarify that the requirement of equivalent terms and conditions of employment “does not extend to de minimis or intangible, unmeasurable aspects of the job.” 29 C.F.R. § 825.215. Examples of terms and conditions that should be equivalent are the employee’s work schedule or his place of work: physical and temporal aspects of the job. Id.
Here, Csicsmann argues that the new position was not equivalent to the one eliminated while he was on leave. He further argues that summary judgment is per se inappropriate because equivalency is a fact-dependent issue for the jury. These arguments fail, however, because even viewing the facts in the light most favorable to him it is undisputed that his salary, title, bonus eligibility, health care, and retirement benefits remained unchanged in his new position. He continued to work the same schedule at the same physical office. Although Csicsmann argues that the new position was less prestigious and less visible than the pre-leave position, these are the very intangible aspects of the position appropriately excluded from an equivalency determination. See 29 C.F.R. § 825.215. The concrete and measurable aspects of Csicsmann’s positions were exactly the same.[2] We therefore hold that AMS restored Csicsmann to an equivalent position under the FMLA.[3]
*167 B.
We next consider whether the district court erred in granting the Appellees summary judgment on Csicsmann’s claim that Sallada “regarded him as disabled” in violation of the ADA. Again, we find no error.
The ADA protects an employee against discrimination by an employer if the employee is “a qualified individual with a disability.” Pollard v. High’s of Baltimore, Inc., 281 F.3d 462, 467 (4th Cir.2002) (quoting 42 U.S.C. §§ 12111(2), 12112(a)). A disability under the ADA is “(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.” 42 U.S.C. § 12102(2). We have explained that in order to defeat summary judgment, an employee must show that the employer “mistakenly believe[d] that an actual, non-limiting impairment substantially limits one of more major life activities.” Rhoads v. Fed. Deposit Ins. Corp., 257 F.3d 373, 390 (4th Cir.2001)(quoting Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 704 (4th Cir.2001)). Proof limited to mere speculation and inferences that an employer believes an employee to be disabled is not enough for the employee to survive summary judgment. See Haulbrook, 252 F.3d at 704 (affirming summary judgment for the employer because plaintiff failed to present any concrete evidence that the employer regarded him as disabled).
Csicsmann argues that he is protected by the ADA under part (C) of the definition of “disabled,” see 42 U.S.C. § 12102(2), specifically that Sallada regarded him as disabled because he had difficulty walking. Csicsmann argues that the reduced walking required in his new position is “indirect proof’ of such regard. However, the record reflects no evidence that Csicsmann was put into the different position because Sallada or other executives at AMS felt that he could not perform the duties of his pre-leave job. It is undisputed that the pre-leave position no longer existed: there was no possibility of Csicsmann filling it. Moreover, Sallada had even rated Csicsmann as a strong performer in a performance review, and Csicsmann himself admitted that he did not know what Sallada’s opinion was about his ability to walk. Even viewed in the light most favorable to Csicsmann, these allegations do not rise to the level of a genuine issue of material fact. We therefore hold that summary judgment in the Appellee’s favor was appropriate.[4]
C.
We hold that because Csicsmann fails to make out a prima facie case of retaliation under the FMLA, ERISA, or Title VII, the district court’s grant of summary judgment to the Appellees on the three retaliation claims was proper.
Our analysis of a retaliation claim under FMLA and ERISA is similar to that under Title VII, requiring as a threshold matter *168 that the employee make out a prima facie case. See Yashenko, 446 F.3d at 550-51 (finding that retaliation analysis under the FMLA follows the Title VII framework); Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 239 (4th Cir.1991) (finding that retaliation analysis under ERISA follows the Title VII framework). To establish a prima facie case of retaliation, an employee must show that “(1) [he] engaged in protected activity, (2) the employer took adverse employment action against [him], and (3) a causal connection existed between the protected activity and the adverse action.” Munday v. Waste Mgmt. of N. Am., Inc., 126 F.3d 239, 242 (4th Cir. 1997) (quoting Ross v. Comm. Satellite Corp., 759 F.2d 355, 365 (4th Cir.1985)).
For the reasons discussed above, Csicsmann’s retaliation claims founder on his inability to show an adverse employment action. As we have explained, finding an adverse employment action when an employer changes an employee’s job focuses on metrics like the employee’s salary, benefits, and opportunity for promotion. See James v. Booz-Allen & Hamilton, 368 F.3d 371, 376 (4th Cir.2004). The Supreme Court has recently clarified that to constitute an adverse employment action, the “plaintiff must show that a reasonable employee would have found the challenged action to be materially adverse.” Burlington Northern & Santa Fe Rwy. Co. v. White, — U.S. -, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006). Before White, “[i]n no case in this circuit have we found an adverse employment action ... without evidence that the terms, conditions, or benefits of ... employment were adversely affected.” Munday, 126 F.3d at 243; see also Boone v. Goldin, 178 F.3d 253, 255-57 (4th Cir.1999) (finding that transferring an employee to a new position is not an adverse employment action “absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion” and that these are only factors that should be considered in determining whether an adverse employment action exists). White explains that while factors other than the terms and conditions of employment may be examined in determining whether an adverse employment action occurred, this is still a heavy burden for the plaintiff: the alleged adverse action must be material. See 126 S.Ct. at 2412-15.
Here, Csicsmann argues that both the elimination of his pre-leave position and his placement in the new Disaster Recovery job are adverse employment actions for FMLA and Title VII purposes. This court has never found an affirmative action on facts like these where the terms and conditions of employment remained the same. See Munday, 126 F.3d at 243. As White explains, trivial harm is not enough to constitute an adverse action; rather, the harm must be material. 126 S.Ct. at 2412-15. Csicsmann fails to show any material harm here — indeed, he offers only evidence of intangible alleged harms stemming from his preference for his previous position. As an adverse employment action is a requirement for a retaliation claim under FMLA and Title VII, summary judgment to Appellees on these claims was appropriate.
Csicsmann’s ERISA arguments are somewhat different: he argues that AMS’s final termination of him in May 2004 was an adverse employment action in retaliation against his request for a longterm disability application in March 2004. Even assuming that requesting a long-term disability application is a protected activity, Csicsmann offers no evidence to show that AMS’s proffered business reason was pretext for discrimination. See Munday, 126 F.3d at 242 (explaining that an employee must prove that an employer’s proffered legitimate business reason for taking the alleged adverse employment *169 action is pretext for discrimination). It is undisputed that AMS-CGI moved the IT department to Toronto and ultimately let go all of the former Server Group workers that Csicsmann worked with. The merger and subsequent reorganization is clearly a legitimate business reason for terminating Csicsmann’s employment and he offers no evidence beyond speculation to refute this conclusion.
Because Csicsmann does not meet his burden of proving a prima facie case of retaliation under ERISA, FMLA, or Title YII, we hold that the district court’s grant of summary judgment should be affirmed on these counts.
IV.
Based on the foregoing, it is hereby ordered that the order of the district court is

AFFIRMED.

. AMS is pre-merger incarnation of appellee CGI-AMS. CGI and AMS merged in March 2004.

. The dissent takes issue with our determination that Csicsmann’s new position was an equivalent one. We note initially that Csicsmann was not entitled to any position: AMS had no obligation to create a new one for him, but did so anyway. Given that and the fact, as we discuss below, that the tangible benefits of his position — salary, health benefits, disability benefits, bonus eligibility, retirement benefits, and his title of "Principal”— remain the same, summary judgment was appropriate under our precedent. -

. Csicsmann also argues that the new position was ultimately slated for layoff while the pre-leave position was not, which requires us to find that the position was not equivalent under 29 C.F.R. § 825.215. This is unpersuasive. The pre-leave position had already been eliminated when Csicsmann returned to work, and the entire department was eventu *167 ally closed after the merger with CGI. There is nothing in the record to support his theory that the pre-leave position would have survived.

. It necessarily follows that summary judgment for the Appellees on Csicsmann’s claim that they failed to accommodate his disability as required by the ADA is also appropriate. To claim an accommodation under the ADA, an employee must first show that he is disabled. See Pollard, 281 F.3d at 467 ("[I]n order to come within the ADA’s protected class, a plaintiff must first show that she is disabled within the meaning of the Act.”) The facts that Csicsmann failed to show that he was regarded as disabled and never argued that he was actually disabled doom his claim for an accommodation as well.